No. 13074

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

CLOVERDALE FOODS COMPANY, a North Dakota Corporation,

Plaintiff and Appellant,

-vs-

THE STATE OF MONTANA, and the DEPARTMENT OF BUSINESS
REGULATION, an administrative agency of the State of
Montana,

Defendants and Respondents.

---

Appeal from:   District Court of the First Judicial District
               Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

   For Plaintiff:

       Small, Cummins and Hatch, Helena, Montana
       Gregory Jackson argued, Helena, Montana

   For Respondents:

       James H McFarland argued, Helena, Montana
       James Wood, Helena, Montana

---

Submitted:   September 30, 1975

Decided: DEC 3 0 1975

Filed: DEC 3 0 197

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal by Cloverdale Foods Company from an adverse decision in a declaratory judgment action tried to the district court, Lewis and Clark County. In the fall 1974, Cloverdale Foods Company (hereinafter called Cloverdale), a North Dakota corporation licensed to do business in the state of Montana, began selling and offering for sale in this state milk in three quart containers. On November 14, 1974, the State of Montana, acting through the Department of Business Regulation, Division of Weights and Measures, hereinafter called State, notified Cloverdale that in so selling and offering for sale its milk in three quart containers it was in violation of section 90-180, R.C.M. 1947, which provides:

> "Fluid dairy products. All fluid dairy products, including but not limited to whole milk, skimmed milk, cultured milk, sweet cream, sour cream, and buttermilk, shall be packaged for retail sale only in units of one (1) gill, one-half (1/2) liquid pint, ten (10) fluid ounces, one (1) liquid pint, one (1) liquid quart, one-half (1/2) gallon, one (1) gallon, one and one-half (1-1/2) gallons, two (2) gallons, two and one-half (2-1/2) gallons, or multiples of one (1) gallon; provided, that packages in units of less than one (1) gill shall be permitted." (Emphasis supplied).

It thus ordered Cloverdale to cease the sale of milk so packaged.

Cloverdale brought a declaratory judgment action against the State. At the time the complaint was filed, an order to show cause and a temporary restraining order issued from the district court. The State filed a motion to quash the temporary restraining order and a brief in support. Subsequent thereto, the matter was tried to the district court. The court filed findings of fact and conclusions of law in favor of the State. Those findings of fact and conclusions of law, in pertinent part, provided:

> "FINDINGS OF FACT
>
> "7. * * *
>
> "a. That all milk which plaintiff sells in Montana complies with all state and federal health or sanitation requirements;
>
> "b. That the size of container used in packaging does not affect the quality or standard of the milk contained therein;

"c. That in the manufacture of three (3) quart containers as compared to smaller containers less oil and wood products would be used;

"d. That Section 90-180, R.C.M. 1947, provides reasonable sizes or classifications (and numbers) for the containers of milk as follows:

"1. one (1) gill
2. one-half (1/2) liquid pint
3. ten (10) fluid ounces
4. one (1) liquid pint
5. one (1) liquid quart
6. one-half (1/2) gallon
7. one (1) gallon
8. one and one-half (1-1/2) gallons
9. two (2) gallons
10. two and one-half (2-1/2) gallons
11. multiples of one (1) gallon

"e. The three (3) quart container is not a size generally recognized by the public and is of such size and appearance that it will be mistaken for the well-known one (1) gallon container by the public and accordingly creates the potential of deception;

"f. That the presently existing sizes (and number of sizes) of milk containers adequately and reasonably meet the need and demands of the public;

"g. That the addition of yet another container size will require substantial investment by milk processors and those investment costs will be ultimately borne by the public, to its detriment;

"h. That the entire system of weights and measures will apparently soon be switched to the metric system which will require substantial investment of capital by milk processors to comply therewith;

"i. That it is in the public interest because of the potential for fraud, deception and misunderstanding that the number (and size) of milk containers be reasonably limited under the police power."

"CONCLUSIONS OF LAW

"3. That Section 90-180, R.C.M. 1947, provides reasonable sizes and numbers of sizes for milk containers and they bear a real and substantial relationship to the exercise of the police power and for the purpose of preserving public health, safety, morals or general welfare and preventing fraud; that, therefore, it is constitutional.

"4. That Section 90-180, R.C.M. 1947 does not discriminate against plaintiff nor deprive plaintiff of the equal protection of the laws, as provided under the Constitution of Montana or the Constitution of the United States.

"5. That the language of Section 90-180, R.C.M. 1947, clearly and reasonably prohibits the packaging of dairy products in three (3) quart containers.

"6. That the use of the three (3) quart containers is prohibited for the retail packaging, sale, marketing and distribution of dairy products in Montana.

"7. That the temporary restraining order heretofore issued is dissolved.

"Let Judgment be entered accordingly."

Cloverdale objected to the findings and moved the court for a new trial. Thereafter the court denied the motion for a new trial, overruled Cloverdale's objections and dissolved the restraining order. Judgment was then entered in favor of the State. Cloverdale then petitioned this Court to stay execution of the judgment pending appeal. The stay pending appeal was granted and the appeal perfected.

On appeal, Cloverdale presents these issues:

1) Whether section 90-180, R.C.M. 1947, is unconstitutional in light of the United States and Montana Constitutions.

2) Whether a proper reading of section 90-180, R.C.M. 1947, permits the marketing of milk in three quart packages.

3) Whether section 90-180, R.C.M. 1947, can be amended by adding "three (3) quart" language.

4) Whether the district court erred in:

(a) concluding that the three (3) quart container has the potential of deceiving the public and

(b) denying Cloverdale a new trial.

Inasmuch as the remaining issues for review are dependent on Issue No. 2, we will examine the statute and the finding related thereto.

In Cherry Lane Farms v. Gilbert Carter, as Treasurer of Gallatin County, 153 Mont. 240, 249, 456 P.2d 296, this Court said:

"The case law of this state long ago established that in construing statutes the intention of the legislature is to be followed, if possible, and

> they must be construed in reference to the subject matter and objects which prompted and induced the legislature to act." (Emphasis supplied)

First, it should be understood that code sections 27-401 through 27-429, R.C.M. 1947, regulate and control the milk industry as it relates to production, transport, processing, storage, distribution and price control, and etc., under the authority of the Montana Milk Control Board. The quality of manufactured dairy products, including milk, in the area of sanitary production, transportation, storage, standards of quality, purity, licensing, and etc., are controlled by the Commission of Agriculture in sections 3-2404 through 3-24-139, R.C.M. 1947.

Although the above areas of control are frequently alluded to in the case before us, they are of no concern here and have no bearing on our considerations. In other words we are not here concerned with price control or related matters. This case involves the interpretation of a statute, section 90-180, R.C.M. 1947, contained in Title 90-Weights-Measures and Grades - Time - Money.

Section 90-180, R.C.M. 1947, has in one form or another been Montana law since its original enactment in Chapter 34, Sections 19 and 20, Sessions Laws of 1911. In 1911 the Act was entitled:

> "An Act to create the Office of State Sealer of Weights and Measures and Providing the Duties and Powers relative to the Inspection and Sealing of Weights and Measures, and Providing Penalties for the Violation thereof."

The subject matter and object of this legislation which induced the legislature to act was to establish a state sealer of weights and measures and to provide for his deputies throughout the state; to establish standards of weights, liquid measures, etc., and to enable the field to be policed to prevent fraud upon the consumer by mislabeling, short weight or measure.

Section 19 provides the standard of liquid measure for milk products to be "sold only by standard wine measure." Wine measure being a measure formerly used for wine and spirits in which the gallon was equal to the present United States gallon.

A reading of the Act as a whole clearly permits the sale of milk products in multiples of a gallon, as long as the container is clearly marked as to the capacity.

The amendment to the original Act of 1911 that offers clarification of legislative intent is contained in Chapter 146, Session Laws of 1939, Section 21. This amendment establishes the standard measure as the gallon, the 1/2 gallon which contains 1/2 as much as a gallon etc, down to the pint. The statute further provided:

> "Any purchaser of milk, cream or skimmed milk, having reason to believe that any measure, can, jar, bottle or other vessel or receptacle, in which milk, cream, or skimmed milk is sold and delivered to him, is not of sufficient size or capacity to contain, by standard wine measure, the amount thereof purchased, may apply to the sealer of weights * * *." (Emphasis supplied.)

With each amendment it became clearer that the legislature intended to establish a "control unit" to which multiples could be compared in the enforcement process to prevent fraud. Fraud has been discussed in terms of mislabeling as to capacity of the container and short measure.

Thereafter the term "unit" was introduced into the descriptive language of the law as found in Title 90, R.C.M. 1947, sections 90-101 through 90-129 [since repealed]. For example, section 90-102-Unit of extension- "The standard yard is the unit or standard measure of length * * *." ; 90-106- Unit of weights -"The standard avoirdupois and troy weights are the units of standard of weights from which all other weights are derived and ascertained."; 90-108 - Unit of liquid measure - "The standard gallon and its parts are the units or standards of measure of capacity for liquids, from which all other measures of liquids are derived and ascertained."

The legislature in the Laws of 1969, Chapter 99, enacted the present law:

> "An Act Relating to Weights and Measures,
> Providing for a State Sealer of Weights and
> Measures, Providing for a System of Weights
> and Measures, Regulating the Sale of Commodi-
> ties by Weight and Measure, Providing for
> Enforcement [and repealer clause]."

This Act effectively revamped and modernized the entire Act. The term "unit" is used but not redefined. Section 2 of the Act provided:

> "Systems of Weights and Measures. The system of
> weights and measures in customary use in the
> United States and the metric system of weights and
> measures are jointly recognized, and either one or
> both of these systems shall be used for all commercial
> purposes in the State of Montana. The definitions of
> basic units of weight and measure, the tables of
> weight and measure, and weights and measures equivalents
> as published by the National Bureau of Standards are
> recognized and shall govern weighing and measuring
> equipment and transactions in the state." (Emphasis
> supplied.)

The federal standards adopted recognize the gill, pint, quart, gallon, barrel and hogshead. Another section redefines as "Special Units of Measure" the barrel as 31 gallons, as opposed to the federal standard of 31 1/2 gallons and several other units not relevant to our consideration here.

It is the opinion of this Court that the term "unit" or "units" as used in this Act is intended by the legislature to mean an absolute standard of measure of capacity from which other measures are derived and ascertained. Therefore, the term "unit" or "units" could not, as used in the section under consideration, be construed to be restrictive to the absolute unit itself but only to divis-ible parts or multiples thereof.

The fraud the legislature intended to control or the inducement that prompted the legislature to act was principally to control actual fraud as it related to false or misleading pack-ages or containers so as to mislead the consumer as to quantity of contents or the contents of the container falling below the adver-tised fill i.e., short weight or fill. A close examination of the

record discloses no evidence to support an allegation or proof of this kind of fraud.

We reverse the trial court's sub-paragraphs of its finding of fact No. 7 and its conclusions of law No. 5 and No.6 relating to the construction of section 90-180, R.C.M. 1947, as it relates to containers containing units of three quarts.

We find, as our discussion points out, the language of section 90-180, R.C.M. 1947, does not prohibit the use of a single container of the capacity of three (3) one (1) quart units for retail packaging, sale, marketing and distribution of fluid dairy products in Montana.

The cause is remanded to the trial court to enter the proper judgment not inconsistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 8 -